UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MARY JO HOLBROCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:17-cv-386 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Mary Jo Holbrock, on October 3, 2017. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Mary Jo Holbrock, filed an application for Disability Insurance Benefits on August 26, 2014, alleging a disability onset date of November 12, 2010. (Tr. 16). The Disability Determination Bureau denied Holbrock's application initially and again upon reconsideration. (Tr. 16). Holbrock subsequently filed a timely request for a hearing on March 16, 2015. (Tr. 16). A hearing was held on September 1, 2016, before Administrative Law Judge (ALJ) Terry Miller, and the ALJ issued an unfavorable decision on December 13, 2016. (Tr. 16-27). Vocational Expert (VE) James Breen appeared at the hearing. (Tr. 16). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

Holbrock met the insured status requirements of the Social Security Act through December 31, 2018. (Tr. 18). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Holbrock had not engaged in disqualifying

work activity since November 12, 2010, the alleged onset date. (Tr. 18). The ALJ determined that Holbrock's attempts at teaching in 2011, 2013, 2014, and 2015 all lasted for such short periods of time that they were considered unsuccessful work attempts. (Tr. 19).

At step two, the ALJ determined that Holbrock had the following severe impairments: cold intolerance possibly due to thyroid issues and/or Raynaud's disease, major depressive disorder, dysthymia, anxiety disorder/social anxiety disorder, panic disorder, PTSD, and personality disorder with borderline and narcissistic traits. (Tr. 19). The ALJ indicated that the medical evidence showed that Holbrock had been diagnosed with and treated for the above impairments, which caused more than minimal limitations in her ability to perform basic work-related activities. (Tr. 19). Holbrock also had the following non-severe impairments: allergic rhinitis, sinusitis, back problems, left shoulder problems, vertigo, low vitamin D levels, bilateral upper extremity paresthesias, heart problems, urinary incontinence, vision problems, and history of alcohol abuse. (Tr. 19).

At step three, the ALJ concluded that Holbrock did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20). The ALJ considered Holbrock's impairments against the criteria set forth in listings 12.04, 12.06, and 12.08. (Tr. 21). To meet the criteria for listings 12.04, 12.06, and 12.08, either the paragraph B criteria or the paragraph C criteria of listings 12.04 and 12.06 must be satisfied. (Tr. 21). The ALJ noted that there was no specific listing for Raynaud's disease or cold intolerance, as well as for thyroid problems. (Tr. 21).

The ALJ considered the paragraph B criteria for mental impairments, which required at least two of the following:

marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(Tr. 21). The ALJ defined a marked limitation as more than moderate but less than extreme and repeated episodes of decompensation, each of extended duration, as three episodes within one year or once every four months with each episode lasting at least two weeks. (Tr. 21).

The ALJ determined that, consistent with or more restrictive than the assessments by the State agency psychologist in 2014 and 2015, Holbrock had mild limitations in activities of daily living, moderate limitations in her ability to maintain social functioning, and moderate limitations in sustaining concentration, persistence, or pace. (Tr. 21). The ALJ indicated that Holbrock had not experienced any episodes of decompensation of extended duration. (Tr. 21). Additionally, the ALJ determined that there was no evidence in the record to support a finding that the paragraph C criteria was satisfied. (Tr. 21). The ALJ considered that Holbrock was neither psychiatrically hospitalized nor had she experienced significant deficits in adaptive functioning. (Tr. 25).

After consideration of the entire record, the ALJ then assessed Holbrock's residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: she needs to avoid even moderate exposure to extreme cold. Mentally, the claimant is limited to unskilled work, defined as limited to occupations that can be fully learned within a short period of time at no more than 30 days and that require little or no judgment to perform simple duties but also include reasoning levels 1, 2 and 3 as defined in the DOT and SVP levels 1 and 2 as rated in the SCO, with the ability to sustain this work throughout the eight-hour workday, without frequent redirection to task. She can also have only occasional work in close proximity to others to minimize distractions and she cannot perform fast-paced work or work requiring a regimented pace of production. She can have only occasional interactions with others, including supervisors, co-workers, and the general public, and

she cannot have exposure to intense or critical supervision.

(Tr. 22). The ALJ explained that in considering Holbrock's symptoms he followed a two-step process. (Tr. 22). First, he determined whether there was an underlying physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Holbrock's pain or other symptoms. (Tr. 22). Then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Holbrock's functioning. (Tr. 22).

The ALJ concluded that Holbrock's medically determinable impairments reasonably could be expected to cause her alleged symptoms. (Tr. 23). The ALJ noted that Holbrock had a long history of mental impairments, including affective, anxiety, and personality disorders. (Tr. 23). She had seen psychiatrists and counselors as far back as the early 1990's at McKinley Health Center. (Tr. 23). Holbrock had received fairly regular and consistent outpatient mental health treatment since the alleged onset date and had attended a depression support group. (Tr. 23). She took medication for her cold intolerance possibly due to her thyroid issues and/or Raynaud's disease, as well as taking other supplements and seeing various specialists, such as endocrinologists and integrative medicine specialists. (Tr. 23).

However, the ALJ concluded that the statements made by Holbrock, Ms. Hunt, and Ms. Grant concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence. (Tr. 23). The ALJ noted that Holbrock previously had applied for disability insurance benefits in 2013 and was denied initially and on reconsideration. (Tr. 23-24). Also, she worked in 2011, 2013, 2014, 2015, and 2016 after her alleged onset date. (Tr. 24). However, the ALJ considered her work attempts as neither substantially gainful nor successful. (Tr. 24). The ALJ also indicated that Holbrock

4

received unemployment compensation. (Tr. 24). Therefore, she reported to State governmental agencies that she was able to work, while alleging to the Social Security Administration that she was disabled. (Tr. 24). Additionally, the ALJ considered that she was able to engage in a full range of activities, including that since the alleged onset date she had written a book on Mayan languages and would walk and ride her bicycle. (Tr. 24).

The ALJ reported that the record indicated that Holbrock's physical examination findings were largely within normal limits since the alleged onset date, except for her core muscle strength weakness and occasional loss of range of motion in her neck, back, and shoulders. (Tr. 24). Additionally, as for her mental impairments, Holbrock had not been hospitalized on an inpatient basis for a psychiatric reason since the alleged onset date. (Tr. 24). Her mental status examination findings generally were within normal limits, except for tangential thinking, paranoia, inappropriate dress, limited insight and judgment, abnormal thought content, argumentativeness, sarcasm, difficulty repeating words after a brief delay, rapid/pressured speech, lack of reciprocal interaction, disorganized thinking, constricted affect, insistence on her own views, concrete thinking, suspiciousness, and depressed, anxious, and angry mood. (Tr. 25).

The ALJ indicated that the RFC was consistent with, or more restrictive, than many of the medical opinions of record. (Tr. 25). The ALJ assigned little weight to opinions of Dr. Candance Martin, Psy.D., Dr. Kay Marie Roy, Psy.D., Dr. Neuman, and David Cooper, LCSW, DAPA, noting that none of the medical sources of record were trained in evaluating disability for the Social Security Administration. (Tr. 26). Additionally, the ALJ indicated that the low GAF scores and the opinions of Dr. Roy, Dr. Neuman, and Cooper were not supported by any

inpatient hospitalization, an inability to engage in activities, or any markedly or extremely abnormal mental status examination findings. (Tr. 26).

At step four, the ALJ found that Holbrock was unable to perform any past relevant work. (Tr. 26). Considering Holbrock's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that she could perform, including janitor (1,500,000 jobs nationally), warehouse worker (345,000 jobs nationally), and housekeeper (560,000 jobs nationally). (Tr. 27). The ALJ found that Holbrock had not been under a disability, as defined in the Social Security Act, from November 12, 2010, through the date of this decision, December 13, 2016. (Tr. 27).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However,

"the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant

work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy.  **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f)**.

Holbrock has requested that the court reverse the ALJ's decision and award benefits, or in the alternative remand the matter for additional proceedings.  In her appeal, Holbrock has argued that the ALJ erred in:  (1) weighing the medical opinion evidence, specifically Dr. Roy; (2) assessing her subjective allegations that addressed intensity, persistence, and limiting effects of her pain and symptoms; and (3) failing to consider her non-severe impairments in the RFC.

Holbrock has argued that the ALJ erred in weighing the opinions of consultative examining psychologist, Dr. Roy.  An ALJ "must consider all medical opinions in the record." ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013); **20 C.F.R. § 404.1527(b), (c).**  Unless a treating source's medical opinion is given controlling weight, an ALJ must weigh each medical opinion based on the following factors:  examining relationship, treatment relationship (including the length and the nature and extent of the treatment relationship), supportability, consistency, specialization, and other factors brought to the ALJ's attention.  **20 C.F.R. § 404.1527(c).**  More weight is given to the medical opinion of a source who has examined the claimant than one who has not.  **20 C.F.R. § 404.1527(c)(1).**

Dr. Roy, a psychologist who examined Holbrock at the request of the Social Security Administration, opined that Holbrock's ability to understand, remember, and carry out simple instructions was moderately-to-severely impaired due to anxiety, impulsivity, and personality disorder.  (Tr. 637).  Dr. Roy also found Holbrock's ability to interact in an effective and stable

manner with the public, coworkers, and supervisors was severely impaired. (Tr. 637). The Commissioner contends that the ALJ properly weighed the opinions of Dr. Roy.

First, the ALJ indicated that Dr. Roy's opinions were entitled to little weight because she was not specifically trained in evaluating disability for the Social Security Administration. (Tr. 26). However, Dr. Roy was a psychologist who examined Holbrock at the request of the Social Security Administration, so she presumably was familiar with the disability program and its rules. *See* **Lipscomb v. Berryhill***,* 2017 WL 3580138, at *6 (N.D. Ind. 2017) (a consultative examiner presumably is familiar with the disability program and its rules).

Next, the ALJ assigned more weight to the opinions of the State agency medical experts because they had the benefit of reviewing more evidence than Dr. Roy. (Tr. 26). Specifically, the Commissioner indicated that they were able to consider Dr. Roy's examination report, as well as other evidence in the record, and the second State agency psychological consultant reviewed updated medical evidence that was not available to Dr. Roy. Dr. Roy had the opportunity to examine Holbrock, and the ALJ relied only on the opinions of the State agency medical experts. "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." **Gudgel v. Barnhart**, 345 F.3d 467, 470 (7th Cir. 2003). Moreover, the Commissioner, in her response, cited evidence in the record that the State agency psychologists considered. However, the ALJ included no such citations in his decision, so the court will not consider that evidence. *See* **Parker v. Astrue**, 597 F.3d 920, 922 (7th Cir. 2010) (noting that **SEC v. Chenery Corp.**, 318 U.S. 80, 87-88 (1943), "forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself has not embraced"). The ALJ must create a logical bridge from the evidence to his conclusion. Thus, without any

9

explanation of the evidence considered, the court cannot trace the ALJ's path of reasoning in assigning more weight to the State agency medical experts' opinions.

The ALJ also indicated that the limitations noted by Dr. Roy were not supported by any inpatient psychiatric hospitalization, any markedly or extremely abnormal mental exams, or her daily living activities. (Tr. 26). Holbrock contends that it was improper for the ALJ to discredit Dr. Roy's opinions because Holbrock lacked inpatient psychiatric hospitalization. The institutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves. ***Voigt v. Colvin,*** 781 F.3d 871, 876 (7th Cir. 2015). Holbrock had none of these traits, yet she may have manifested an inability to interact with the public, coworkers, or supervisors and suffered moderate-to-severe impairment in her ability to understand, to remember, or to carry out simple instructions. The ALJ also discredited Dr. Roy's opinions because of Holbrock's lack of markedly or extremely abnormal mental status examinations. Yet, the ALJ ignored evidence that Holbrock presented to other treatment providers with abnormal appearance, depressed or anxious mood or affect, impaired insight or judgment, and impaired thought processes of speech.

The ALJ found that Dr. Roy's opinions were inconsistent with Holbrock's fairly full activities. Specifically, the ALJ indicated that Holbrock drove, wrote a book, went out alone, shopped, visited her family, worked at times at a skilled job after the alleged onset date, and cared for her personal needs independently. Holbrock asserts that the ALJ did not provide any evidence to support the allegation that she had written a book or, assuming that she had, how much time and effort she expended. Also, Holbrock testified that she either left or was

terminated from her work because her impaired concentration precluded her from performing a job that required her to grade examinations on a full-time basis.

An ALJ must evaluate every medical opinion in the record and, in determining the value of the opinion, must consider factors such as whether the medical source has examined the claimant; whether the medical source has adequately supported the opinion; whether the opinion is consistent with the record as a whole; and whether the source has a particular specialization in a given area. **20 C.F.R. § 404.1527(c).** The ALJ only briefly mentioned Dr. Roy's examination findings before discrediting her opinions. The ALJ failed to indicate whether he considered that Dr. Roy had examined Holbrock, whether she adequately supported her opinions, or whether her opinions were consistent with the record as a whole. Also, given that the Social Security Administration requested that Dr. Roy examine Holbrock, she presumably had the particular specialization required.

An ALJ may not discount the opinion of an examining physician without a valid explanation. ***Beardsley v. Colvin,*** 758 F.3d 834, 839 (7th Cir. 2014). Agency's regulations instruct that the medical opinion of an examining source generally receives more weight than the medical opinion of a non-examining source. *See* **20 C.F.R. § 416.927(c)(1).** A conclusion to the contrary requires a "good explanation for this unusual step," ***Beardsley,*** 758 F.3d at 839, which the ALJ did not supply here. On remand, the ALJ is directed to reevaluate the opinions of Dr. Roy.

Holbrock has argued that the ALJ improperly considered her subjective symptoms. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. ***Shideler v. Astrue,*** 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must support his evaluation with specific reasons that are supported by the record. ***Pepper v. Colvin,*** 712 F.3d 351, 367 (7th

11

Cir. 2013). Under SSR 16-3p, an ALJ must assess the claimant's subjective symptoms rather than assessing her "credibility." SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).

The ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce her symptoms. SSR 16-3p, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 WL 1119029, at *4, 9. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

    (i) The individual's daily activities;

    (ii) Location, duration, frequency, and intensity of pain or other symptoms;

    (iii) Precipitating and aggravating factors;

    (iv) Type, dosage, effectiveness, and side effects of any medication;

    (v) Treatment, other than medication, for relief of pain or other symptoms;

    (vi) Other measures taken to relieve pain or other symptoms;

    (vii) Other factors concerning functional limitations due to pain or other symptoms.

See **20 C.F.R. § 404.1529(c)(3).**

The ALJ found that Holbrock's medically determinable impairments reasonably could be expected to cause the alleged symptoms. (Tr. 23). However, "the statements made by the claimant, Ms. Hunt, and Ms. Grant concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record…" (Tr. 23). Holbrock has argued that the ALJ's belief that subjective complaints can be accepted only if "entirely consistent" with the evidence is legal error. "However, the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if [he] otherwise points to information that justifies [his] credibility determination." **Pepper v. Colvin**, 712 F.3d 351, 367–68 (7th Cir. 2013).

The ALJ found that Holbrock's subjective symptoms were not entirely consistent with the evidence based on her previous application for disability insurance benefits that was denied initially and upon reconsideration. The ALJ noted that she did not pursue an appeal. However, the ALJ neither inquired into the reasoning for not filing an appeal nor did he indicate what negative inference could be drawn from her failure to pursue an appeal. Thus, the ALJ failed to present a logical bridge that connects the previous denial to Holbrock's subjective symptom allegations.

Next, the ALJ determined that since Holbrock worked between the alleged onset date and 2016, although not substantial gainful activity or successful work attempts, it suggested that she was not as limited as she alleged. The ALJ indicated that because Holbrock's work attempts lasted for such short periods of time they were considered unsuccessful. Attempting to work after the onset of disability does not necessarily mean that a person was not disabled. As the Seventh Circuit noted, "even persons who *are* disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits." **Shauger v. Astrue**,

675 F.3d 690, 697 (7th Cir. 2012); *see also* **Pierce v. Colvin**, 739 F.3d 1046, 1051 (7th Cir. 2014) ("[A] claimant's dogged efforts to work beyond her physical capacity would seem to be highly relevant in deciding her credibility and determining whether she is trying to obtain government benefits by exaggerating her pain symptoms."). The ALJ noted that although Holbrock may not be able to perform skilled work, as required by her job as an assistant professor, the record supported that she was able to perform unskilled work.

The ALJ also found her subjective allegations were not consistent with the evidence based on Holbrock's receipt of unemployment benefits. The Seventh Circuit cautions that all of the surrounding facts must be carefully considered before attributing a lack of credibility to the receipt of unemployment benefits. **Scrogham v. Colvin,** 765 F.3d 685, 699 (7th Cir. 2014). The court notes that Holbrock's decision to receive unemployment benefits yet represent to the Social Security Administration that she was unable to work may play a role in assessing her subjective complaints of disability. "A person who is not certain whether he will qualify for Social Security disability surely has, *and should have*, a strong incentive to keep looking for work and to pursue unemployment compensation as an interim source of income. An ALJ should not discount a claimant's credibility based on an application for unemployment compensation without taking these incentives and pressures into account." **Lambert v. Berryhill,** 896 F.3d 768, 779 (7th Cir. 2018).

The record indicated that Holbrock was able to engage in a full range of activities. The ALJ did not improperly rely on Holbrock's account of her daily activities in finding that she was able to maintain full-time employment. But an ALJ must explain the perceived inconsistencies between the claimant's daily activities and the medical evidence. *See* **Carradine v. Barnhart,** 360 F.3d 751 (7th Cir. 2004); **Zurawski v. Halter,** 245 F.3d 881, 887 (7th Cir. 2001). The ALJ

failed to explain any inconsistencies he found between her activities, complaints of pain, and the medical evidence.

The ALJ's analysis of Holbrock's subjective symptom analysis required more elaboration. Additionally, a "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2; *see* **Krontz v. Berryhill**, 2018 WL 3738249, at *8 (N.D. Ind. Aug. 7, 2018). The ALJ evaluated Holbrock's overall character, rather than focusing on whether the intensity and persistence of her symptoms limited her ability to perform work-related activities on a full-time basis. The ALJ's subjective symptoms analysis was patently wrong and requires remand.

Holbrock has argued that the ALJ erred in assessing her RFC. Specifically, she contends that the ALJ failed to consider her non-severe impairments. "The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." **Young v. Barnhart**, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence—including statements from medical sources about what the claimant can still do—as well as "other evidence, such as testimony by the claimant or his friends and family." **Craft v. Astrue,** 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 404.1545(a)(3).**

"When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a

severe impairment." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010), citing **20 C.F.R. § 404.1523(c)**. The importance of this requirement to consider *all* limitations is such that "[a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton*, 596 F.3d at 423 (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)). If the record does not show that the ALJ considered all of a claimant's impairments "in concert," a court "cannot say that the ALJ built the required 'accurate and logical bridge' between the evidence and her conclusion." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009).

The ALJ determined that Holbrock had the following non-severe impairments: allergic rhinitis, sinusitis, back problems, left shoulder problems, vertigo, low vitamin D levels, bilateral upper extremity paresthesias, heart problems, urinary incontinence, vision problems, and history of alcohol abuse. (Tr. 19). Holbrock asserts that the ALJ failed to include any work-related functional restrictions that stemmed from her non-severe impairments. Rather, the ALJ only included a functional restriction that related to Holbrock's medically determinable severe impairment of intolerance to cold.

At step two, the ALJ discussed Holbrock's severe and non-severe impairments. At step four, the ALJ found that Holbrock's physical impairments were within normal limits except for core muscle strength weakness and occasional reduced range of motion in her neck, back, and shoulders, with no evidence of musical atrophy or deficits in her extremities. However, the ALJ did not explain why the evidence did not support the inclusion of functional restrictions in the RFC. Also, the ALJ did not mention Holbrock's non-severe impairments when assessing the RFC. "Although the non-severe impairments may not have an effect on the claimant's RFC ultimately, the ALJ [is] required to explain why." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). On remand, Holbrock's RFC must accommodate all of her limitations, including

limitations caused by non-severe impairments and caused by the combination of her impairments.

Holbrock has requested that the court remand for an award of benefits. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." **Allord v. Astrue**, 631 F.3d 411, 415 (7th Cir. 2011). The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the appropriate remedy is to remand for further proceedings unless the evidence before the court compels an award of benefits. **Briscoe v. Barnhart**, 425 F.3d 345, 355 (7th Cir. 2005). The record here does not warrant an award of benefits.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 4th day of April, 2019.

/s/ Andrew P. Rodovich
United States Magistrate Judge